UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAY W. HUSSEY                                          CIVIL ACTION

VERSUS                                                 NO. 08-1253

MICHAEL J. ASTRUE, COMMISSIONER                        SECTION "N" (2)
OF SOCIAL SECURITY ADMINISTRATION


**FINDINGS AND RECOMMENDATION**

Plaintiff, Jay W. Hussey,[1] seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for

supplemental security income benefits ("SSI") under Title XVI of the Act. 42 U.S.C. §§

405(g), 1381a. This matter was referred to a United States Magistrate Judge pursuant to

28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely Memorandum of Facts and Law. Record Doc.

No. 12. Defendant filed a timely reply memorandum. Record Doc. No. 14.

---

[1]Plaintiff's counsel violated this court's General Order issuing its Notice Concerning Personal
Data Identifiers dated April 9, 2003 (Rule 12 of this court's Administrative Procedures for Electronic
Case Filing) by including plaintiff's personal data identifier in his memorandum. Counsel is instructed
to comply with Rule 12 in the future.

I.   <u>PROCEDURAL HISTORY</u>

Hussey filed an application for SSI on January 4, 2005, alleging disability since December 3, 2004 due to a stroke with partial right-sided paralysis.  (Tr. 52, 58).  After his application was denied, plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on June 18, 2007.  (Tr. 181A-208).  On June 29, 2007, the ALJ issued a decision denying plaintiff's application.  (Tr. 15-24).  After the Appeals Council denied review on December 3, 2007, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 4-7).

II.   <u>STATEMENT OF ISSUES ON APPEAL</u>

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ erred by proceeding with the hearing when plaintiff did not knowingly and intelligently waive his right to counsel and when he was prejudiced by his lack of counsel.  As sub-issues to this assignment of error, plaintiff also contends that
   1.   the ALJ failed to develop the record properly and
   2.   the ALJ failed to consider properly the opinion of plaintiff's treating physician.
B.   The ALJ erred by failing to consider all of plaintiff's limitations in determining his residual functional capacity.
C.   The ALJ erred by failing to find that plaintiff's impairments meet or equal Listing 1.04.
D.   The ALJ erred by finding that plaintiff can perform his past relevant work.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Hussey has severe impairments consisting of disorders of the nervous system and hypertension, which do not meet or equal any listed impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

2.   Plaintiff's testimony concerning the limiting effects of his impairments was not entirely credible or corroborated by the medical evidence.

3.   He has the residual functional capacity to perform a narrow range of light work and essentially a full range of sedentary work, provided that he never climbs ladders, ropes and scaffolds, and that he is limited in his ability to use his right upper extremity for pushing, pulling, reaching, handling, fingering and feeling.

4.   Hussey is capable of performing his past relevant work as an owner/manager and a credit manager as generally performed.

(Tr. 20-23).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a

3

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations

4

that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2007).  The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920;

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Perez, 415 F.3d at 461.

   The claimant has the burden of proof under the first four parts of the inquiry.  If

he successfully carries this burden, the burden shifts to the Commissioner to show that

---

[2]The five-step analysis requires consideration of the following:

   First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

   Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

   Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

   Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

   Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2007) ("Medical-Vocational Guidelines").

other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

B.    Factual Background

Hussey testified that he was 49 years old, 5'10" tall and weighed 175 pounds, which is his normal weight.  He stated that he lost 55 pounds when he was hospitalized in 2006, but he has gained most of it back.  (Tr. 188-89).  He said that he is physically unable to drive and does not have a driver's license.  He testified that he lives in a house with his brother, who works during the day.  (Tr. 189).

Plaintiff stated that he most recently worked as a business owner and financial investigator.  He said that his jobs during the prior fifteen years included credit analyst, executive for an investigator and sales representative.  (Tr. 190).  He testified that he last worked in 2002, when he owned a company called Financial Investigations and Analysis. He said that, after he stopped working, he stayed home with his daughter and then moved

6

in with and took care of his mother, who had cancer and died in August 2004.  He said he was not paid for taking care of her.  (Tr. 191).

Hussey stated that he had a stroke on December 3, 2004.  He testified that his right arm was paralyzed after the stroke and that, having had physical therapy and worked very hard, he can now move the arm and it functions, but he cannot lift it very well.  He said that, after Hurricane Katrina, he was very sick and was hospitalized for 58 days at East Jefferson Hospital.  He stated that he was diagnosed with hepatitis C and that, during 2006, he had some kind of autoimmune response that led to gout in his feet, swelling in all of his joints and the loss of his front teeth.

Plaintiff testified that he fell off a ladder on January 17, 2002 and severely damaged three cervical discs.  (Tr. 192).  He stated that he has a disc rupture at C5-6, a bulge with narrowing of the neuroforamina and displacement of the nerve root.  He said he also has a paracentral disc bulge at C6-7, which prevents him from driving because he cannot turn his neck.  He said he can lift some things, but not a lot of weight.  He stated that he had blood tests drawn the previous week and was awaiting the results.  (Tr. 193).  He testified that his medical condition has been life-altering.  (Tr. 194).

Hussey stated that he takes 20 milligrams of generic oxycodone[3] for his ruptured disc and iron supplements because he is very anemic.  He said he just stopped taking an anti-inflammatory medicine on the advice of his doctors because they were afraid that he is losing blood in his gastrointestinal tract.  He testified that the drugs are prescribed by his primary doctor, Robert Ryan, whom he sees every 30 days.  (Tr. 195).  He said he has been on the same dosage for five years except that, during the aftermath of Hurricane Katrina, he went for about a year without taking anything.  But he stated that the drug "certainly helps me to function."  (Tr. 196).

Plaintiff testified that he does as much light housework as he can, such as washing the dishes, making the beds, doing the laundry and keeping the house looking nice.  However, he stated that he feels bad physically and has serious medical problems.  He said he is hoping to get a diagnosis and effective treatment following the recent tests so that he can get back to work.  He stated that he has not been out of the house much in recent years.

Plaintiff said that he has no problems with drugs or alcohol and that he does not drink at all because of his hepatitis.  (Tr. 197).  He stated that he does a little bit of

---

[3]Oxycontin (generic name:  oxycodone hydrochloride) is "a narcotic painkiller" that is "prescribed for moderate to severe pain when continuous, around-the-clock relief is needed for an extended period of time."  PDRHealth, avail. at
http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Oxy1625.html&contentName=Oxycontin&contentId=412.

shopping with his brother, but does not get out much.  (Tr. 198).  He testified that he almost died when he was in the hospital and that his health has declined in the last couple of years because of complications from hepatitis C.  He said he gets exhausted and cannot go for very long without taking a nap.  He stated that he saw a rheumatologist two weeks before the hearing and that the recent blood tests were ordered to rule out multiple myeloma, which is a cancer.  (Tr. 205).

      C.    <u>Vocational Expert Testimony</u>

A vocational expert, Thomas Meunier, testified at the hearing.  The ALJ posed a hypothetical of a 49-year-old individual with a college degree who alleges disability at age 46, who has Hussey's past work experience and who is limited to occasional gross and fine manipulation and no reaching with the right upper extremity, but is unlimited in his left upper extremity; can lift up to ten pounds occasionally and frequently; cannot balance, climb or work at unprotected heights; can stand and/or walk for six out of eight hours in a work day; and can sit for six out of eight hours in a work day.  (Tr. 200-01). Meunier stated that plaintiff's past relevant work as an owner/manager and a credit analyst were sedentary, skilled jobs that required only occasional gross and fine handling, grasping, fingering and reaching.  (Tr. 201-02).  He testified that the hypothetical individual could perform plaintiff's past relevant work as an owner/manager and a credit analyst, but could not perform the past relevant jobs of insurance agent and debit sales

collector, because those were light rather than sedentary, and the insurance agent job would require frequent grasping, handling, reaching and fingering.  (Tr. 202).

Meunier testified that a skilled worker who works for someone else would not be able to miss more than three or four days per month because of illness and/or doctor's appointments before his employment would be terminated.  He said that an owner of a business would have more leeway with being able to miss work.  (Tr. 203).  Meunier testified that an employee who needed to lie down or rest, because of pain or inability to concentrate or function, for more time during the eight-hour work day than the normal lunch and rest breaks would be subject to termination.  He said such a person could not perform any job in the United States economy.  (Tr. 204).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 21-23).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.      Plaintiff's Appeal

      1.      Even if plaintiff did not validly waive his right to counsel, he was
             not prejudiced by the error

Hussey argues that he did not knowingly and intelligently waive his right to have counsel at the hearing and that he was prejudiced as a result.  He contends that he was prejudiced because the ALJ failed to develop the record adequately and failed to consider properly the opinion of plaintiff's treating physician.

A Social Security claimant has no constitutional right to counsel, Cornett v. Astrue, 261 Fed. Appx. 644, 2008 WL 58822, at *6 (5th Cir. 2008) (citation omitted), but does have a statutory and regulatory right to have counsel present at a hearing.  42 U.S.C. § 406; 20 C.F.R. § 404.1705; Norden v. Barnhart, 77 Fed. Appx. 221, 2003 WL 22228387, at *1 (5th Cir. 2003).

> The claimant may, however, waive this right if given sufficient information to enable him to decide intelligently whether to retain counsel or proceed pro se.  "Sufficient information" includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded.

Id. (citing Clark v. Schweiker, 652 F.2d 399, 403-04 (5th Cir. 1981)).  Contrary to Hussey's argument, the Fifth Circuit does not require the ALJ to advise a claimant how a lawyer could help him.

Hussey received written notices of his right to counsel prior to the hearing.  First, he received a Notice of Disapproved Claims dated May 6, 2005 (Tr. 33-36), which advised him of his right to have a lawyer help him with his appeal of the initial decision. The Notice stated that free legal services were available, that some lawyers do not charge a fee unless the claimant wins the appeal, and that the local Social Security office could give him a list of groups that could help him.  (Tr. 35).[4]  Second, on May 24, 2005, plaintiff signed a Request for Hearing by Administrative Law Judge (Tr. 31), which advised him of his right to representation and that his local Social Security office could give him a list of legal referral organizations.  Finally, he was sent a notice of hearing dated June 18, 2007, which told him that "you may choose to have a person represent you" and that, "if you want to have a representative, please get one right away" and have that person call the Social Security office with his or her contact information.  (Tr. 27).

At the outset of the hearing, the ALJ asked Hussey to confirm that he had received written notice of his right to have a representative at the hearing and that he wished to proceed on his own, which Hussey did.  Plaintiff also stated that he had a bachelor's

---

[4]The Notice of Disapproved Claims that was sent to Hussey purportedly enclosed a copy of "Your Right to Question the Decision Made on Your Claim (SSA Pub. No. 64-088)."  (Tr. 36). However, this document is not in the certified record.  The Commissioner attached to his opposition memorandum a copy of a similar publication, Record Doc. No. 14-2, Defendant's Exh. A, but it is not the same publication.  Moreover, the exhibit is not supported by any affidavit or other evidence that would render it admissible.  Accordingly, I have not considered it.

12

degree and that he could read and write English.  The ALJ told Hussey that he could have more time to obtain counsel if he wanted it, that some lawyers would handle his case without charge or would charge a fee only if he prevailed, and that the Social Security office had a list of such attorneys.  Hussey stated that he understood and that he wanted to proceed with the hearing.  (Tr. 183-85).

The Commissioner's failure to advise Hussey of the 25% limit on any legal fee[5] is the only error, if it was an error, that plaintiff has identified concerning whether he knowingly waived his right to counsel.[6]  Only the Fifth, Seventh and Eleventh Circuits require the Commissioner to inform a claimant of that limit, in addition to advising him of his options for obtaining an attorney, including the possibility of free counsel and contingency fee agreements.  Desrosiers v. Astrue, 274 Fed. Appx. 74, 2008 WL 1813227, at *1 (2d Cir. 2008) (citing Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994); Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982); Clark, 652 F.2d at 403).

Despite the Fifth Circuit's inclusion, since Clark was decided in 1981, of the fee limitation as a part of the "sufficient information" necessary to support a valid waiver,

---

[5]See 42 U.S.C. § 406(a)(2)(A)(ii)(I), (b)(1)(A) (attorney's fee limited to 25% of past-due benefits awarded); 20 C.F.R. § 416.1530(b)(1)(i) (same).

[6]Even if the court were to consider Defendant's Exh. A, the publication entitled "Your Right to Question a Decision Made on Your Supplemental Security Income (SSI) Claim," that document does not mention the 25% fee cap.

it is not clear from the Fifth Circuit's application of this standard whether the three listed "explanations" to be "include[d]" are merely factors to consider, or are all mandatory requirements for a determination that a claimant received "sufficient information" to knowingly waive his right to counsel.  See Bunton v. Shalala, 35 F.3d 559, 1994 WL 499637, at *2 (5th Cir. 1994) ("This Court has identified certain factors to guide the courts in judging the sufficiency of the notice. . . .  In addition, the claimant should be informed that attorneys may represent the claimant on a contingent basis and that the fee cannot exceed twenty-five percent of the amount of benefits received.").

In Bunton, for example, "[t]he notice Bunton received did not specify that the fee was limited to twenty-five percent of her potential benefits, but it did inform her that any fee charged must be approved by the SSA.  The notice clearly informed Bunton that" if she were unable to pay for representation, organizations existed that might be able to help her.  Id. (emphasis added).  The Fifth Circuit found "nothing to suggest Bunton was misled.  We conclude that this notification complies with the requirements set forth in Clark . . . and accordingly, Bunton knowingly effectuated a waiver of her right to counsel at the hearing."  Id.  In Norden, the Fifth Circuit cited the three-part Clark standard but, in finding that plaintiff knowingly waived his right to counsel, the court stated only that he had received written notices of his right to representation prior to the hearing and that the ALJ had informed him at the hearing of his right to counsel.  The Fifth Circuit did not

mention whether plaintiff had received notice of the fee limit.  Norden, 2003 WL 22228387, at *1; see also Swain ex rel. Lewis v. Barnhart, 78 Fed. Appx. 341, 2003 WL 2003 WL 22348985, at *1 (5th Cir. 2003) (without mentioning the fee limit, finding that plaintiff who "received three written notices advising him of his right to representation and was advised by the ALJ at the hearing of that right as well" was sufficiently informed to waive the right); cf. Castillo v. Barnhart, 325 F.3d 550, 552 (5th Cir. 2003) (Plaintiff waived her right to counsel because she received four written notices that "informed her of the type of assistance an attorney could provide to her during the hearing, that there is a possibility she could qualify for free representation, that she could also acquire counsel who would only receive compensation if she prevailed, and that the Social Security office would withhold a maximum of twenty-five percent of her past due benefits to pay toward the attorney's fee," and she confirmed at the hearing that she wanted to proceed without counsel.).

The fundamental issue for determination is whether Hussey knowingly and intelligently waived his right to counsel.  In Desrosiers, the plaintiff was not advised of the 25% attorney fee limitation.  The Second Circuit distinguished the decisions in which the Fifth, Seventh and Eleventh Circuits had required that the claimant be so advised, based on the record of the administrative hearing, as follows:

Unlike in <u>Binion</u>, <u>Clark</u>, and <u>Smith</u>, however, nothing in the record of this case indicates that Desrosiers's failure to obtain counsel was related to her inability to pay. Indeed, the hearing transcript indicates that Desrosiers's inability to retain an attorney was a function of the weakness of the merits of her case. We therefore conclude that Desrosiers did receive adequate notice of her right to counsel and did knowingly and voluntarily elect to proceed pro se. . . .

Finally, we note that, under different circumstances, the failure to inform Desrosiers of the attorney fees cap might have led to reversal of the ALJ's decision. It seems to us that it would have been better practice for the agency and the ALJ to inform her of this provision.

<u>Desrosiers</u>, 2008 WL 1813227, at *1.

The same can be said of the instant case. Although the Commissioner did <u>not</u> advise Hussey before or during the hearing that any attorney's fee could not exceed 25% of past due benefits awarded, and it would have been better practice for the Commissioner to do so, Hussey gave no indication at the hearing that he was concerned about the amount of any potential attorney's fee. He stated only that he had not had time to look for a lawyer and that he wanted to proceed with the hearing without one because he was anxious to get back to work. (Tr. 184-85). In these circumstances, Hussey knowingly and intelligently waived his right to counsel.

However, even if plaintiff did not validly waive his right to counsel because he was not advised of the fee cap, he must show that he was prejudiced by the error to merit a remand. <u>Castillo</u>, 325 F.3d at 552; <u>Brock v. Chater</u>, 84 F.3d 726, 729 n.1 (5th Cir. 1996). Similarly, if the ALJ failed in his heightened duty to develop the record when a

16

plaintiff is unrepresented by counsel, Castillo, 325 F.3d at 553, Hussey must show prejudice resulting from the failure.  Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000); Newton, 209 F.3d at 458; Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995).

In both events, the court "must still determine whether this error was harmless. Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (quotation omitted).  To establish prejudice, plaintiff must show that having counsel or that additional development of the record "could and would have adduced evidence that might have altered the result." Brock, 84 F.3d at 728 (quotation omitted); accord Castillo, 325 F.3d at 552.

Hussey argues that he was prejudiced by his lack of an attorney and by the ALJ's failure to develop the record fully because he asked the ALJ several times to hold the record open until he obtained the results of recent blood tests and a possible new diagnosis, but the ALJ refused to hold the record open "prospectively." (Tr. 193-94, 205-07).  The ALJ rendered his decision on June 29, 2007, eleven days after the hearing.

The only medical evidence that Hussey says he would have submitted had the ALJ held the record open are lab test results from March 13, 2007 through June 7, 2007; progress notes dated April 2, 2007; and a one-page letter from R. Vaclav Hamsa, M.D., of Metairie Orthopedic Clinic dated June 23, 2007.  (Tr. 171-810).  Plaintiff submitted

all of these records to the Appeals Council.  The Appeals Council considered the evidence, but found that it did not provide a basis for changing the ALJ's decision. (Tr. 5).  The Appeals Council specifically discussed Dr. Hamsa's letter, which states that Hussey is "unable to perform work activity."  (Tr. 173).  The Appeals Council held that it is not bound by a doctor's conclusion of disability and that Dr. Hamsa's letter did not include findings or other information to show that Hussey is totally disabled under Social Security law.  (Tr. 5).  Hussey contends that he was prejudiced by the Appeals Council's failure to assign controlling weight to this letter from his treating physician or to remand his application so that the ALJ could give the letter controlling weight.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."  Newton, 209 F.3d at 455.  However, the record does not support plaintiff's allegation that Dr. Hamsa was his "treating physician."

> The Regulations define a "treating" physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant.  Given that [a certain doctor] examined Hernandez only two times during the insured period (and only one time thereafter), the record does not reflect that they had an ongoing treatment relationship.

Hernandez v. Astrue, No. 07-51160, 2008 WL 2037273, at *6 n.4 (5th Cir. May 13, 2008) (citing 20 C.F.R. § 404.1502).

18

The record contains no medical records from Dr. Hamsa other than his June 23, 2007 letter and a single sheet of progress notes on which the date of March 5, 2007 is crossed out above the April 2, 2007 notes.  There is also one undated record signed by Andre F. Guidry, M.D., of the Family Practice Center, on which plaintiff reported that he was being followed by orthopedist "R.V. Hampson" once a month.  (Tr. 129).  Based on the other records from the Family Practice Center within the same exhibit, it appears that the undated appointment with Dr. Guidry was around the beginning of March 2007.  No other evidence indicates that plaintiff was seen by Dr. Hamsa before April 2, 2007.  Under the regulations and the holding of <u>Hernandez</u>, Dr. Hamsa's single documented examination of plaintiff does not qualify him as a treating physician.  Therefore, his opinions are not entitled to great weight.

> Even if Dr. Hamsa qualified as a treating physician,
>
> [t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  The treating physician's opinions are not conclusive.  The opinions may be assigned little or no weight when good cause is shown.  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

<u>Newton</u>, 209 F.3d at 455-56 (quotations and citations omitted).

19

Hussey has not shown that these records would have changed the outcome if the ALJ had considered them.  Dr. Hamsa's letter lists diagnoses of herniated nucleus pulposus, moderate cervical and lumbar spondylosis, lab tests positive for rheumatoid arthritis, and chronic anemia of unknown etiology.  These diagnoses are consistent with prior test results and diagnoses in the records that the ALJ reviewed.  Dr. Hamsa's statement that Hussey cannot perform work activity does not mean that he is disabled for purposes of the Act, because such a statement is not a medical opinion and because the existence of disability is a legal conclusion that may be made only by the Commissioner. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

Dr. Hamsa's statement that Hussey cannot work is conclusory and unsupported by any clinical findings in his one-page letter, which contains only Dr. Hamsa's diagnoses, his prognosis of "poor" and his conclusory statement about disability.  (Tr. 173).  Similarly, Dr. Hamsa's one-page, handwritten progress notes dated April 2, 2007 include only some lab test results, plaintiff's report of a one-year history of generalized joint pain and stiffness, prescriptions for Soma[7] and Oxycontin, a referral to the LSU

---

[7]Soma (generic name: carisoprodol) is used, along with rest, physical therapy, and other measures, for the relief of acute, painful muscle strains and spasms.  PDRHealth, avail. at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Som1409.html&contentName= Soma&contentId=532.

Rheumatology Clinic and some questions about possible chemical exposure or collagen variation in plaintiff's skin, for which a work-up is needed.  (Tr. 180).  The Appeals Council therefore had good cause to assign little or no weight to Dr. Hamsa's opinion.

Because Hussey "points to no evidence that would have been adduced and that could have changed the result had [he] been represented by counsel," he was not prejudiced and the ALJ's decision should be affirmed.  Brock, 84 F.3d at 728, 729 n.1.

> 2.    The ALJ did not fail to consider all of plaintiff's limitations in determining his residual functional capacity.

Hussey argues that the ALJ erred in determining his residual functional capacity by failing to consider all of his limitations in conjunction with the severe impairments that the ALJ found.  Specifically, plaintiff contends that the ALJ failed to recognize the severity and the limiting effects of his cervical condition, including that he has virtually no use of his dominant right arm and shoulder.  Hussey argues that the ALJ failed to take into account his rheumatoid arthritis, his osteoarthritis in both hands and his back impairments, for which he was hospitalized three times with diagnoses of osteomyelitis[8] and an abscess in his spine.  Plaintiff further contends that the ALJ failed to recognize

---

[8]Osteomyelitis is "an infectious[,] usually painful inflammatory disease of bone that is often of bacterial origin and may result in death of bone tissue."  Medline Plus Medical Dictionary, avail. at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

the limiting fatigue associated with his anemia and hepatitis C.  Finally, Hussey argues that the ALJ failed to develop the record fully concerning his anxiety.

Hussey relies primarily on the consultative examination report of internist Miljana Mandich, M.D., dated April 12, 2005.  (Tr. 99-104).  The ALJ thoroughly and accurately reviewed Dr. Mandich's findings.   In addition, the residual functional capacity assessment by the non-examining physician, E. Eisenhauer, M.D., on April 27, 2005 (Tr. 105-12), was based on Dr. Mandich's findings.  The ALJ relied on Dr. Eisenhauer's assessment, along with the updated medical records that continued to be consistent with that assessment, in making his own residual functional capacity findings. (Tr. 22-23).

Those findings are substantially supported by the more recent records.  A CT scan of plaintiff's cervical spine on November 26, 2005 showed "mild subluxation[9] of the anterior arch of C1 from the odontoid with a 6 [millimeter] separation which may not be acute" "as only minimal subluxation is seen."  (Tr. 140, 148).  An abdominal x-ray on March 30, 2007 showed a mildly enlarged liver but was otherwise normal (Tr. 123, 126), and physical examination of plaintiff's musculoskeletal and neurological systems by George E. Catinis, M.D., on March 29, 2007 was normal.  (Tr. 157).  As late as March 29, 2007, Hussey had not yet been treated for hepatitis C, despite having been

---

[9]Subluxation is "partial dislocation (as of one of the bones in a joint)."  Id. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=subluxation.

diagnosed in November 2005, and was not taking any iron supplements for his anemia, despite having been advised to do so.   (Tr. 156).

Although plaintiff's lab tests showed a positive rheumatoid factor that was not present when Drs. Mandich and Eisenhauer prepared their reports and further work-up for possible rheumatoid arthritis was recommended, the more recent medical records do not reflect any more severe functional impairments as a result of that test than the ALJ included in his residual functional capacity.  The medical records also show that the discitis, osteomyelitis and abscess of the spine for which plaintiff was hospitalized in late November through December 2005, in January 2006 and in March 2006 were resolving. He was discharged in stable and improved condition in March 2006, and was able to move all his extremities well.  An x-ray of his right shoulder on November 26, 2005 was negative, while an MRI of his lumbar spine on March 29, 2006 showed, in addition to the resolving discitis and osteomyelitis, stable degenerative facet arthritis at L1-2, with no deleterious changes from previous exams.  (Tr. 135, 137-45, 152).  X-rays of both hands on March 30, 2007 showed some degenerative changes consistent with osteoarthritis.  (Tr. 125).  Hussey testified that his right arm now functions and that he can move it, although he can lift only a limited amount of weight, and that the drugs he takes help him to function.  (Tr. 192).  The ALJ's residual functional capacity assessment took these limitations into account, to the extent that they were credible.

23

Nothing in the medical records supports plaintiff's allegations of serious fatigue. To the extent that he testified to more severe limitations than the ALJ assessed, the ALJ found him not credible. (Tr. 22). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court. Bedford v. Astrue, 236 Fed. Appx. 957, 2007 WL 1733132, at *4 (5th Cir. 2007) (citing Newton, 209 F.3d at 459; Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. Id. at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 164). Here, the ALJ explained that plaintiff's testimony was not credible because the clinical findings in the medical records did not support his allegations.

As to plaintiff's last argument, he did not allege disability based on anxiety, and the record does not substantially support that he has any severe anxiety or other mental impairment. Despite a few references in his testimony and in plaintiff's self-reported functional reports to nervousness and anxiety (Tr. 48, 53-54, 100, 205), he never sought or received any mental health treatment and has provided no medical evidence of any mental impairment. Although the ALJ has the duty to develop fully and fairly the facts

24

relative to a claim for benefits, the "ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995) (citing Pierre v. Sullivan, 884 F.2d 799, 802-03 (5th Cir. 1989)).  In these circumstances, the ALJ did not err by failing to develop the record any further concerning plaintiff's alleged anxiety.

Thus, the record as a whole substantially supports the ALJ's residual functional capacity assessment.  This assignment of error lacks merit.

        3.    The ALJ did not err by failing to find that plaintiff's impairments meet or equal Listing 1.04

Hussey next argues that the ALJ erred by failing to find that his impairments meet or equal Listing 1.04 for disorders of the spine.  That listing requires, in relevant part:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>   A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A).

Plaintiff argues that he meets the initial requirement of the Listing because he has diagnoses of a herniated nucleus pulposus in his cervical spine, rheumatoid arthritis and cervical spondylosis.  He further contends that his January 2002 cervical MRI results, which showed right paracentral nerve bulge at C4-5 with posterior displacement of the nerve root and narrowing of the right neural foramina[10] (Tr. 90), together with Dr. Mandich's findings that he had limitation of motion, weakness, atrophy and an absence of deep tendon reflexes in his right arm, and Dr. Mandich's opinion that the MRI results and plaintiff's symptoms were "suggestive of cervical radiculopathy"[11] (Tr. 103), are equivalent to the subparagraph A requirements.  Hussey also cites his own testimony that he does not drive because he cannot turn his neck and that he takes medication for pain.

Whether an impairment or combination of impairments is equivalent to a listing is a medical question that can be answered only by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); Deters v. Secretary of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986); Buras v. Apfel, No. 00-654, 2000 WL 1760704, at *2 (E.D. La. Nov. 29, 2000) (Clement, J.); Tessitore v. Apfel, No. 97-2925,

[10]Foramen (plural foramina) means "a small opening, perforation, or orifice."  Id. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=foramen.

[11]Radiculopathy means "any pathological condition of the nerve roots."  Id. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=radiculopathy.

1998 WL 564292, at *2 (E.D. La. Sept. 3, 1998) (Vance, J.) (citations omitted).  The ALJ

correctly declined to credit Hussey's testimony about his inability to turn his neck in

preference to the medical records.

A claimant's impairment(s) can be considered "medically equivalent" to a listed

impairment

> if the medical findings are at least equal in severity and duration to the
> listed findings. . . .  If [the claimant has] more than one impairment, and
> none of them meets or equals a listed impairment, [the Commissioner] will
> review the symptoms, signs, and laboratory findings . . . to determine
> whether the combination of . . . impairments is medically equal to any
> listed impairment.

20 C.F.R. § 416.926(a).

The medical evidence fails to show equivalence to Listing 1.04.  The MRI results

show nerve root <u>displacement</u>, not nerve root <u>compression</u>, as subparagraph 1.04(A)

requires.  Furthermore, the evidence does not substantially support a limitation of motion

of plaintiff's <u>spine</u>.  Dr. Mandich noted in April 2005 that plaintiff had normal range of

motion of the neck, although with some pain, and of the lumbar spine (Tr. 101), while

Dr. Catinis did not note any limitations in plaintiff's range of motion on March 29, 2007.

Dr. Catinis observed that Hussey was able to ascend and descend the examining table

without difficulty and without any particular changes in gait or station.  (Tr. 156-58).

Therefore, this assignment of error lacks merit.

4.     The ALJ did not err by finding that plaintiff can perform his past relevant work

Hussey contends that the ALJ erred by finding that he can perform his past relevant work as an owner/manager and credit manager because the ALJ did not explain the exact extent of plaintiff's limitation in his ability to use his right upper extremity for pushing, pulling, reaching, handling, fingering and feeling.  He argues that he cannot use his right arm and shoulder for any activities at all, especially for fine manipulation, which he contends precludes him from performing his past relevant work.

Plaintiff cites Dr. Mandich's findings in April 2005 that he has no deep tendon reflexes in his right arm and has some atrophy of his right arm, limited abduction and rotation of his right shoulder, and gradual and slow right hand movement.  (Tr. 102). However, Hussey testified that, after physical therapy and hard work on his part, the arm functions and he can now move it, although he cannot lift it very well, and that he can lift some things, but not a lot of weight.  On March 29, 2007, Dr. Catinis found no muscle atrophy, joint deformity or neurological deficits in any of plaintiff's extremities, and he observed that Hussey was able to ascend and descend the examining table without difficulty.  (Tr. 157).

The Commissioner may properly rely on vocational expert testimony to reach conclusions about the specific requirements of a particular occupation, including working

conditions and the attributes and skills needed.  20 C.F.R. § 404.1566(d), (e); <u>Leggett</u>,

67 F.3d at 565; <u>Vaughan v. Shalala</u>, 58 F.3d 129, 132 (5th Cir. 1995).  The ALJ in the

instant case posed a hypothetical to the vocational expert that accounted for plaintiff's

age, education, work experience and the physical limitations that the ALJ found to be

credible.  The vocational expert testified that such a claimant could perform plaintiff's

past relevant work.

An ALJ's hypothetical question is defective and will not be allowed to stand

unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the

claimant or his representative is afforded the opportunity to correct deficiencies in the

ALJ's question by mentioning or suggesting to the vocational expert any purported

defects in the hypothetical questions (including additional disabilities not recognized by

the ALJ's findings and disabilities recognized but omitted from the question)." <u>Bowling</u>

<u>v. Shalala</u>, 36 F.3d 431, 436 (5th Cir. 1994).  The ALJ's hypothetical to the vocational

expert included the limitations that the ALJ found credible and supported by the medical

evidence, and plaintiff was given the opportunity to question the expert.

Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

Plaintiff knowingly and intelligently waived his right to counsel.  Even if the ALJ

erred by failing to advise Hussey of the 25% attorney's fee limit and plaintiff did not

knowingly and intelligently waive his right to counsel, he was not prejudiced by the error.  The ALJ considered all of plaintiff's credible limitations in determining his residual functional capacity.  Substantial evidence supports the ALJ's findings that plaintiff's impairments do not meet or equal Listing 1.04 and that he can perform his past relevant work.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __16th__ day of December, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE